# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF FLORIDA
# PENSACOLA DIVISION

KEVIN LEE BOYINGTON,

    Petitioner,

v.                                          Case No. 3:22-cv-824-LC-MJF

RICKY D. DIXON,

    Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Kevin Lee Boyington has filed an amended petition for writ of habeas corpus under 28 U.S.C. § 2254. Doc. 5. Respondent ("the State") answered, providing relevant portions of the state court record. Doc. 11. Boyington replied. Doc. 13. The undersigned concludes that no evidentiary hearing is required for the disposition of this matter, and that Boyington is not entitled to habeas relief.[1]

---

[1] The District Court referred this case to the undersigned to address preliminary matters and to make recommendations regarding dispositive matters. *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C); Fed. R. Civ. P. 72(b).

## I. BACKGROUND FACTS AND PROCEDURAL HISTORY[2]

The victim in this case, Dorothy Miller, owned a construction company named "Sclease Construction." Miller lived on a large piece of property on Mobile Highway in Escambia County, Florida, that was within a mile of the Alabama border. Miller's property served as both her home and the site where Miller stored her construction company's equipment and tools.

Boyington lived in Alabama, just across the border from Miller. On July 15, 2017, while Miller was on vacation, Boyington drove his truck onto Miller's property, broke into Miller's garage and trailer and, with the assistance of his girlfriend Tina Sassoni, stole several items from Miller's garage, trailer, and yard. Boyington then transported the stolen items to his own property with the intent to sell them. The stolen items included a golf cart, three Cub Cadet commercial riding lawn mowers, an arc welder, two commercial generators, a tiller, a compressor, several power tools, and several hand tools.

---

[2] The background facts are drawn from the sworn arrest report and probable cause affidavit that provided the stipulated factual basis for Boyington's *nolo contendere* plea. *See* Doc. 11-3, Ex. B1 at 10-19 (Arrest Report, Aff.); *Id*. at 44-48 (Plea Agreement titled "Sentence Recommendation"); *see also id*. at 149-67 (Plea Hr'g Tr.).

During Boyington's last trip to Miller's home. Miller's nephew—Garey Buscaino, drove by Miller's home and noticed that Miller's garage door was open. Buscaino knew that Miller was out of town. Buscaino stopped his car, walked to the garage, and caught Boyington and Sassoni in the garage with their hands full of Miller's property.

When Buscaino asked the pair what they were doing, Boyington and Sassoni dropped the items, ran to Boyington's truck—a Chevrolet S10 pickup truck with an Alabama tag—and sped off toward Alabama. Buscaino recognized Boyington's truck because Buscaino lived in the Seminole area of Alabama and previously had seen Boyington's truck.

Buscaino called the police and reported the burglary. Buscaino described some of the items that were missing, including the three Cub Cadet commercial lawn mowers. Buscaino then led officers (from Escambia and Baldwin counties) into Alabama to an area where he thought the truck might be located. As Buscaino drove by Boyington's residence, he spotted—from the roadway—the truck in which Boyington and Sassoni fled. Buscaino and the officers stopped their vehicles, and Buscaino identified the truck as having been involved in the burglary. Directly next to the truck—and visible to the officers from the roadway—were Miller's three Cub Cadet commercial lawn mowers.

The officers looked around the general area of the property and saw an open garage. Sassoni was in Boyington's open garage surrounded by several items stolen from Miller, including the generators, the tiller, and a compressor. In a two-wheeled trailer located in the garage, deputies found a "multitude" of stolen tools. Several of the items were marked with the name "Sclease." Sassoni confessed to her role in the crimes, and described how she assisted Boyington in stealing Miller's property.

In Escambia County Circuit Court Case No. 2017-CF-4270, Boyington was charged with four crimes: (1) Burglary of an Unoccupied Dwelling (Count 1); (2) Grand Theft (Count 2); (3) Burglary of an Unoccupied Structure (Count 3); and (4) Criminal Mischief (Count 4). Doc. 11-3, Ex. B1 at 8.[3] Together, the charges carried a maximum possible penalty that, if imposed consecutively, totaled 35 years and 60 days of imprisonment. *Id*. at 8, 44, 151.[4]

The defense filed a motion to suppress evidence seized from Boyington's property. Doc. 11-3, Ex. B1 at 2-22. The trial court conducted a suppression hearing

---

[3] Citations to the state-court record are to the electronically-filed exhibits attached to the State's answer. Doc. 11. The court cites the attachment number followed by the lettered exhibit and the page number of the original document. When a page of a document bears more than one page number, the court cites the Bates stamp number on the bottom center of the page.

[4] Counts 1 and 2 each carried a maximum penalty of 15 years of imprisonment. Count 3 carried a maximum penalty of 5 years of imprisonment. Count 4 carried a maximum penalty of 60 days in the county jail.

on May 16, 2019, and denied the motion. *Id*. at 87-148 (Mot. Hr'g Tr.), 26-43 (Mot. Hr'g Exs.).

On August 19, 2019—the morning of jury selection—Boyington entered into a plea agreement with the State. Doc. 11-3, Ex. B1 at 44-48 (Plea Agreement); *Id*. at 149-67 (Plea Hr'g Tr.). Pursuant to the agreement, Boyington pleaded *nolo contendere* to all four crimes as charged and reserved his right to appeal the denial of his motion to suppress. In exchange for Boyington's plea, the State agreed to an "incarcerative cap of 10 years state prison" and also agreed to *nolle prosse* a charge of Grand Theft that was pending in another case against Boyington (Escambia County Circuit Court Case No. 2019-CF-0830) that carried a maximum penalty of 5 years of imprisonment. The plea agreement was memorialized in a document titled "Sentence Recommendation" which was executed by Boyington, defense counsel, and the prosecutor. Doc. 11-3, Ex. B1 at 44-48.

The trial court conducted a plea colloquy, determined that Boyington was pleading *nolo contendere* freely, knowingly, and voluntarily and that there was a factual basis for the plea. Doc. 11-3, Ex. B1 at 157-67. The trial court accepted Boyington's plea and set the matter for a sentencing hearing. *Id*. at 66-67.

At the conclusion of the sentencing hearing, the trial court adjudicated Boyington guilty of the four crimes and sentenced him to a total term of 10 years of

imprisonment. Doc. 11-3, Ex. B1 at 168-224 (Sentencing Hr'g Tr.); Ex. B1 at 55-64 (J. & Sentence).[5] The charge in Case No. 2019-CF-0830 was *nolle prossed*. *Id*. at 222. On January 25, 2021, the Florida First District Court of Appeal ("First DCA") affirmed the judgment and sentence *per curiam* and without written opinion. *Boyington v. State*, No. 1D19-4215, 310 So. 3d 394 (Fla. 1st DCA 2021) (Table) (copy at Doc. 11-12, Ex. B10).

On March 18, 2021, Boyington filed in the state circuit court a *pro se* motion to reduce or modify sentence under Florida Rule of Criminal Procedure 3.800(c). Doc. 11-17, Ex. E1. The circuit court denied the motion on May 12, 2021. Doc. 11-18, Ex. E2.

On May 6, 2021, Boyington filed in the First DCA a *pro se* habeas petition alleging ineffective assistance of appellate counsel. Doc. 11-14, Ex. C1. The First DCA denied the petition on June 17, 2021. *Boyington v. State*, No. 1D21-1403, 320 So. 3d 347 (Fla. 1st DCA 2021) (copy at Doc. 11-15, Ex. C2).

Boyington filed his *pro se* federal habeas petition on February 7, 2022, which he later amended. Docs. 1, 5. Boyington's amended petition raises two claims: (1)

---

[5] The trial court sentenced Boyington to 10 years of imprisonment on Count 1; 10 years of imprisonment on Count 2; and 5 years of imprisonment on Count 3, all terms of imprisonment to be served concurrently. On Count 4, Boyington was sentenced to time-served.

the trial court erred in denying his motion to suppress the evidence resulting from a warrantless search; and (2) appellate counsel was ineffective for erroneously arguing the "plain view" doctrine, instead of the "open view" doctrine when appealing the suppression issue. Doc. 5.

The State asserts that Boyington is not entitled to habeas relief because: (1) the *Stone v. Powell* doctrine bars federal habeas review of the first claim, *see Stone v. Powell*, 428 U.S. 465 (1976); and (2) Boyington fails to meet § 2254(d)'s demanding standard concerning the second claim. Doc. 11.

## II.  SECTION 2254 STANDARD OF REVIEW

A federal court "shall not" grant a habeas corpus petition on any claim that was adjudicated on the merits in state court unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1). The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362 (2000).[6] Justice O'Connor described the appropriate test:

---

[6] Unless otherwise noted, references to Supreme Court's *Williams* case are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Under the *Williams* framework, the federal court must first determine the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision." *Lockyer v. Andrade*, 538 U.S. 63, 71-72 (2003). After identifying the governing legal principle, the federal court determines whether the state court's adjudication is contrary to the clearly established Supreme Court case law. The adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *See Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

If the "contrary to" clause is not satisfied, the federal court determines whether the state court "unreasonably applied" the governing legal principle set forth in the Supreme Court's cases. The federal court defers to the state court's reasoning unless

the state court's application of the legal principle was "objectively unreasonable" in light of the record before the state court. *See Williams*, 529 U.S. at 409; *Holland v. Jackson*, 542 U.S. 649, 652 (2004). "[E]ven a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

The Supreme Court has emphasized often that a state prisoner's burden under § 2254(d) is "difficult to meet, . . . because it was meant to be." *Richter*, 562 U.S. at 102. The Court elaborated:

> As amended by AEDPA, § 2254(d) stops short of imposing a complete bar on federal-court relitigation of claims already rejected in state proceedings. *Cf. Felker v. Turpin*, 518 U.S. 651, 664, 116 S. Ct. 2333, 135 L.Ed.2d 827 (1996) (discussing AEDPA's "modified res judicata rule" under § 2244). It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no further. Section 2254(d) reflects the view that habeas corpus is a "guard against extreme malfunctions in the state criminal justice systems," not a substitute for ordinary error correction through appeal. *Jackson v. Virginia*, 443 U.S. 307, 332, n. 5, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979) (Stevens, J., concurring in judgment). As a condition for obtaining habeas corpus from a federal court, <u>a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement</u>.

*Richter*, 562 U.S. at 102-03 (emphasis added).

A federal court may conduct an independent review of the merits of a petitioner's claim only if it first finds that the petitioner satisfied § 2254(d). *See Panetti v. Quarterman*, 551 U.S. 930, 954 (2007). Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

### III. DISCUSSION

**Ground One**     **"Trial court erred in denying the Petitioner's motion to suppress the evidence resulting from a warrantless search." Doc. 5 at 9.**

Boyington claims that the officers' warrantless search of his private property violated the Fourth Amendment and that the trial court erred in denying his motion to suppress. Doc. 5 at 9; *see also* Doc. 13. The State asserts that under the *Stone v. Powell* doctrine, this court is precluded from reviewing the Fourth Amendment claim because the State provided Boyington an opportunity for full and fair litigation of it in state court. Doc. 11 at 6, 15-17.

#### A. *The Stone v. Powell Doctrine*

In *Stone v. Powell*, the Supreme Court held: "[W]here the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." 428

U.S. at 494 (footnotes omitted). The Court explained that, in the context of collateral review of Fourth Amendment claims, "the contribution of the exclusionary rule, if any, to the effectuation of the Fourth Amendment is minimal, and the substantial societal costs of application of the rule persist with special force." *Stone*, 428 U.S. at 494-95 (footnote omitted). "For a claim to be fully and fairly considered by the state courts, where there are facts in dispute, full and fair consideration requires consideration by the fact-finding court, and at least the availability of meaningful appellate review by a higher state court." *Mincey v. Head*, 206 F.3d 1106, 1126 (11th Cir. 2000) (internal quotation marks and citation omitted).

### B. *Application of the Stone v. Powell Doctrine to Boyington's Fourth Amendment Claim*

Boyington does not assert that the State denied him a full and fair hearing on the merits of his Fourth Amendment claim in state court, Docs. 1, 13, nor can he truthfully make such a claim. The record establishes that Boyington raised this Fourth Amendment claim in a pre-trial motion to suppress. Doc. 11-3, Ex. B1 at 2-22. The trial court conducted an evidentiary hearing during which the court heard testimony, considered documentary evidence (including photographs), and considered the parties' arguments. *Id.* at 87-148 (Mot. Hr'g Tr.), 26-43 (Exs.).

At the conclusion of the hearing, the trial court denied Boyington's motion and made explicit findings on matters essential to the Fourth Amendment issue. Doc.

11-3, Ex. B1 at 134-46. Boyington obtained further review of the issue on direct appeal. Doc. 11-7, Ex. B5 (Boyington's *Pro Se* Initial Br.); Doc. 11-9, Ex. B7 (Appellate Counsel's Initial Br.); Doc. 11-10, Ex. B8 (State's Answer Br.); Doc. 11-11, Ex. B9 (Appellate Counsel's Reply Br.). The state appellate court affirmed. Doc. 11-12, Ex. B10. Because Boyington had a full and fair opportunity to litigate his Fourth Amendment claim in the state courts, *Stone v. Powell* bars federal habeas review of the claim.

**Ground Two**     **"Ineffective Assistance of Appellate Counsel." Doc. 5 at 11.**

Boyington claims that his appellate counsel was ineffective because he "failed to apply correct standard using 'open view' doctrine and instead made his argument based on the inapplicable 'plain view' doctrine." Doc. 5 at 11. Boyington alleges that he exhausted this ineffective-assistance claim by presenting it to the First DCA in his state habeas petition. Doc. 5 at 11. The State asserts that Boyington is not entitled to federal habeas relief because he fails to satisfy § 2254(d)(1)'s demanding standard. Doc. 11 at 17-22.

### A. *The State Court's Decision*

The First DCA summarily denied Boyington's state habeas petition in a one-sentence opinion: "The petition alleging ineffective assistance of appellate counsel is denied on the merits." Doc. 11-15, Ex. C2. The First DCA's decision is an

"adjudication on the merits" of Boyington's claim and, therefore, is reviewed under § 2254(d)'s deferential standard. *See Richter*, 562 U.S. at 100 ("This Court now holds and reconfirms that § 2254(d) does not require a state court to give reasons before its decision can be deemed to have been 'adjudicated on the merits.'").

**B.** ***Federal Law Governing Claims of Ineffective Assistance of Counsel***

Claims of ineffective assistance of appellate counsel are governed by the two-part test announced in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Smith v. Robbins*, 528 U.S. 259, 285 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective). To obtain relief under *Strickland*, a petitioner must establish that: (1) "counsel's representation fell below an objective standard of reasonableness," and (2) "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.

The inquiry under *Strickland*'s performance prong is "whether counsel's assistance was reasonable considering all the circumstances." *Strickland*, 466 U.S. at 688. Counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id*. at 690. The burden to overcome that presumption and to show that counsel's

performance was deficient "rests squarely on the defendant." *Burt v. Titlow*, 571 U.S. 12, 22-23 (2013).

*Strickland*'s prejudice prong requires a defendant to establish a "reasonable probability" of a different outcome. *See Strickland*, 466 U.S. at 694. A "reasonable probability" is a "probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105 (citations omitted). The Supreme Court explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so. The *Strickland* standard is a general one, so the range of reasonable applications is substantial. Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d). When § 2254(d) applies, the question is not whether counsel's actions were reasonable. The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id.* (citations omitted).

### C.  *Boyington Is Not Entitled to Habeas Relief*

The First DCA's conclusion that Boyington's ineffective-assistance-of-appellate-counsel claim lacked merit "precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101. The District Court "must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of this Court." *Richter*, 562 U.S. at 102.

> For context, the trial court denied the motion to suppress for these reasons:
>
> So here's where my dilemma is. Clearly there is a fence. I think at this point I have testimony that there was a "no trespassing" sign at the time, but you also have a chain link fence where there – and I have – where there is evidence to support the fact that this was a continuous event, and there is a truck matching the description that just left the scene of a burglary and suspected stolen items right next to it from the view of the road.
>
> And it turned out to be exactly what they thought, which was the stolen items from the house. And it was visible from the road.
>
> So if they had been – so if the stolen – if the lawn mowers, because there's really where I think this really comes down to – and I see your argument, I think it's a good argument, Ms. Etheridge [Defense Counsel], that even the deputy testified that he has the same kind of lawn mower at home. But you've got this suspected stolen property from the view of the street directly next to the truck that has

just left the scene of a burglary, even though there's a fence and a "no trespassing" sign.

If they had been behind the house, I think this would have been easy. The fact that the deputy testified—and it's undisputed—that he could see the stolen property from the road makes this case different. And this is a close case, but I'm going to deny the motion to suppress.

Doc. 11-3, Ex. B1 at 145-46.

Appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967). Doc. 11-4, Ex. B2; *see also*. Counsel set forth the law and facts underlying the suppression issue, and asserted that he was unable to argue in good faith that the denial of the motion to suppress was reversible error.

The First DCA authorized—and Boyington filed—a *pro se* initial brief. Doc. 11-6, Ex. B4; Doc. 11-7, Ex. B5. Boyington's *pro se* brief argued that the trial court erred in denying his motion to suppress because even if the officers saw the truck and lawnmowers in "open view," that merely provided them probable cause. The officers still were required to obtain a warrant or have some exception to the warrant requirement before they entered Boyington's property—and the officers had neither. Doc. 11-7, Ex. B5.

The First DCA ordered Boyington's appellate counsel to file an initial brief addressing whether the trial court erred in denying the motion to suppress. Doc. 11-8, Ex. B6. This time, appellate counsel's initial brief asserted that the trial court *did*

err in denying the motion to suppress. Doc. 11-9, Ex. B7 (Initial Br.); Doc. 11-11, Ex. B9 (Reply Br.). At the outset, counsel advised the court that: "Mr. Boyington has filed a pro se Initial Brief with this Court and requests that this Court consider his pro se brief in conjunction with this Initial Brief." Doc. 11-9, Ex. B7 at 1. Counsel went on to brief both the plain-view doctrine and the open-view theory, and argued that neither could justify the warrantless entry and search. Doc. 11-9, Ex. B7; Doc. 11-11, Ex. B9.

The State's answer brief likewise addressed both theories. Doc. 11-10, Ex. B8. The First DCA affirmed the trial court's ruling without explanation. Doc. 11-12, Ex. B10.

In light of the state-court record, the First DCA had a reasonable basis to deny Boyington's claim that appellate counsel was ineffective for failing to argue the "open view" doctrine. The First DCA reasonably could have concluded that Boyington failed to satisfy *Strickland*'s performance prong because counsel briefed the "open view" argument Boyington claims counsel omitted. And because both counsel and Boyington himself briefed the issue of "open view," Boyington failed to show that he was prejudiced by the alleged deficiency in counsel's briefing. Boyington is not entitled to habeas relief on Ground Two.

### IV. A CERTIFICATE OF APPEALABILITY IS NOT WARRANTED

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. *See* 28 U.S.C. § 2254 Rule 11(b).

"[Section] 2253(c) permits the issuance of a COA only where a petitioner has made a 'substantial showing of the denial of a constitutional right.'" *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (quoting 28 U.S.C. § 2253(c)). "At the COA stage, the only question is whether the applicant has shown that 'jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.'" *Buck v. Davis*, 580 U.S. ___, 137 S. Ct. 759, 774 (2017) (quoting *Miller-El*, 537 U.S. at 327). "When the district court denies a habeas petition on procedural grounds without reaching the prisoner's underlying constitutional claim, a COA should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of

the denial of a constitutional right *and* that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (emphasis added). Here, Petitioner has not made the requisite demonstration. Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." 28 U.S.C. § 2254 Rule 11(a). If there is an objection to this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

## V. Conclusion

For the reasons set forth above, the undersigned respectfully **RECOMMENDS** that:

1. The amended petition for writ of habeas corpus, Doc. 5, challenging the judgment of conviction and sentence in *State of Florida v. Kevin Lee Boyington*, Escambia County Circuit Court Case No. 2017-CF-4270, be **DENIED**.

2. The District Court **DENY** a certificate of appealability.

3. The clerk of court close this case file.

At Pensacola, Florida, this <u>8th</u> day of December, 2022.

/s/ *Michael J. Frank*
**Michael J. Frank**
**United States Magistrate Judge**

### NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days of the date of the report and recommendation. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control.</u> An objecting party must serve a copy of the objections on all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.** *See* **11th Cir. R. 3-1; 28 U.S.C. § 636.**